## Mapp, Appellant, *v.* Philadelphia.

Argued June 9, 1969. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Carl M. Mazzocone,* with him *Sheer & Mazzocone,* for appellant.

*Matthew W. Bullock, Jr.,* Second Deputy City Solicitor, with him *Mansfield C. Neal, Jr.* and *Frank J. Pfizenmayer,* Assistant City Solicitors, and *Edward G. Bauer, Jr.,* City Solicitor, for City of Philadelphia, appellee.

OPINION BY HOFFMAN, J., September 11, 1969:

This is an appeal from denial of benefits in 1960 by the Workmen's Compensation Board. The procedural context in which this case is now before us is complex, but it is sufficient to note that at the present time we are directed by the Supreme Court to consider the case on the merits. *Mapp v. Philadelphia,* 433 Pa. 517, 252 A. 2d 684 (1969).

The first issue to be determined is whether appellant suffered an accident under the Workmen's Compensation Act.

A brief recitation of the relevant evidence presented to the Board follows.

Appellant, Ruby Mapp, then twenty-four years old, joined the Philadelphia police force on April 25, 1955,

having been certified as fit for duty by the Police Department medical examiner. After a period of training lasting two to three weeks which was devoted to orientation procedures in the police department, appellant volunteered to act as an undercover agent seeking evidence of the narcotics trade. This was the first instance that a woman was used by the police department for undercover work. Appellant assumed the identity of a narcotics user and prostitute and worked as a part-time waitress. For the next five months she was required to go without food or sleep on occasion and work long hours. Finally, on October 18-19, 1955, based in part on information which appellant had furnished, the Philadelphia police staged the largest narcotics raid in Philadelphia history. Approximately 200 suspects were arrested, booked and held for preliminary hearings. For the thirty-six hour period during which the raid took place and the suspects were held for preliminary hearings, appellant, in addition to her physical exertion, went without sleep. During that time she identified suspects when they were arrested and testified at their preliminary hearings the next morning. Ten days later, appellant, during a ceremony in which she received an award of commendation from the Mayor of Philadelphia for her extraordinary efforts, collapsed. She was taken from the Mayor's Reception Room to the Philadelphia General Hospital, where she was diagnosed as suffering from gastro-intestinal difficulties and confined for five days. Subsequently, appellant suffered a marked psychoneurotic reaction.

On these facts the Workmen's Compensation Board found that appellant had not suffered an accident within the meaning of the Workmen's Compensation Act.

The Board accepted arguendo appellant's contention that her disability was caused by her physical strain

during the five months in which she was an undercover agent and by her exertion during the mass narcotic raid. Nonetheless, the Board found that these exertions were usual to her occupation and, accordingly, did not constitute a compensable accident. The Board stated "Claimant's occupation called for long working hours and irregular living habits, normally exposing her to stress in investigations and court trials. She claims that this all culminated on October 19, 1955, when she testified in about thirty magistrate cases prosecuting persons whom she had investigated. Claimant had been an investigator for two months. *The work she was doing was new to her, but they were the duties of a criminal investigator, her occupation,* for which she was specially trained." (Emphasis added)

Thus, it is evident that the Board only considered the work patterns of appellant's profession in general in determining whether she had suffered an unusual strain. In light of *Hamilton v. Procon,* 434 Pa. 90, 252 A. 2d 601 (1969), however, this was in error. In *Hamilton,* the Supreme Court stated "We hold that the unusual strain doctrine is to be applied according to the work history of the individual involved and not according to the work patterns of his profession in general." At 99.

Equally untenable is the Board's conclusion that appellant is not entitled to benefits because her disability was not caused solely by her on-the-job exertion. In making this finding the Board rejected appellant's medical testimony and, instead, adopted the medical testimony of the employer's witness, Dr. Samuel G. Bullock. Dr. Bullock and the Board, however, failed to address themselves to the relevant medical question of whether the strain of the appellant's work aggravated her pre-existing condition testified to by Dr. Bullock. While it may be true, as Dr. Bullock stated, that

appellant's disability was not "traumatic" in that it was not exclusively caused by the strain of her employment, this does not establish that the strain of her employment did not contribute to her disability. The law in this regard was stated in *Kracoski v. Bernice White Ash Coal Co.,* 183 Pa. Superior Ct. 155, 130 A. 2d 190 (1957) : "Where a claimant has a pre-existing condition, the mere aggravation thereof is itself not compensable unless there is clear proof of an accident in the ordinary lay understanding of that term . . . . Overexertion which aggravates a pre-existing condition may be sufficient." At 161-162. Accordingly, the Board should have taken such " 'additional testimony by way of medical testimony or otherwise as may be presented by the parties, or procured (on its own motion), upon the question of what relation, if any, as a sole or aggravating and contributing cause, the (alleged) accident . . . bore to the claimant's condition of disability . . . .' " *Wilk v. The Budd Co.,* 174 Pa. Superior Ct. 108, 110, 100 A. 2d 127 (1953).

A third ground for the Board's refusal of compensation to appellant was its finding that her claim was barred by the statute of limitation because it had not been filed within sixteen months of her last payment of wages in lieu of compensation. The Act of June 2, 1915, P. L. 736, art. III, §315, as amended, 77 P.S. 602.

This finding was capricious, however, as the uncontradicted testimony at the hearing before the referee established that appellant had received a wage payment from her employer on April 6, 1958, only thirteen months before she filed her claim on July 23, 1959. See *Schrecengost v. Heilman Trucking Co.,* 174 Pa. Superior Ct. 299, 101 A. 2d 417 (1953).

This case is remanded to the Board for reconsideration in light of *Hamilton v. Procon.* Specifically, the Board should reconsider (1) whether appellant has

suffered an accident in the course of her employment and (2) if so, whether such accident aggravated her pre-existing condition so as to contribute to her subsequent disability.

Case remanded.

MONTGOMERY, J., concurs in the result.

WATKINS, J., dissents.