512

Berger *v.* Berger et al., Appellants.

Argued June 12, 1969. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Penrose Hertzler,* for appellants.

*Joseph M. Leib,* with him *Jerome Poltenstein,* and *Rubin, Leib and Caesar,* for appellee.

Opinion by Hoffman, J., November 13, 1969:

This is a workmen's compensation case brought by the widow of a deceased employee.

Decedent was a forty-nine year old man who worked in his brother's grocery store. According to the uncontradicted testimony of the brother, decedent "used to take care of trade, wait on the people, buy stuff, running my business." Decedent's duties were generally of a light nature. "Boys take care of all the heavy stuff, cleaning up the store and things like that." Occasionally, however, the decedent would deliver grocery orders to store customers. Such orders were generally small. The brother testified in this regard as follows: "Q. In your business you did deliver orders? A. Yes. . . . Just little orders we used to deliver. Q. What do you mean? A. $3, $4, $5. Q. Did you have many orders that ran over $30.00? A. I would say every month maybe when they get their checks. Q. How many such orders would you have a month? A. Maybe five or six orders at once."

It is apparent from the record that the two boys who were employed in the store delivered most of these

orders. Thus, the record indicates that decedent delivered only one or two heavy orders a month.

On June 12, 1965, decedent delivered a large carton and a large shopping bag filled with "groceries, meats and vegetables, soap powder and bleach and regular food, canned goods." The customer to whom the delivery was made testified that decedent drove to her home in a car and then made two trips from the street to the house, bringing the box on one trip and the bag on the other. After the completion of the second trip, the decedent collapsed and was taken to the hospital by the customer. Shortly thereafter he died of a heart attack.

On this record, the Board found "if strain there was, it was the result of a normal amount of exertion required by the decedent's everyday duties. There is no evidence that carrying the box of groceries or shopping bag of groceries required exertion that was unusual in the course of decedent's employment. The criterion is not whether the act causing the injury was unusual generally speaking, *but whether it was unusual and untoward in the course of the employment in which the employee was engaged.*" [Emphasis added]

This language, on its face, is ambiguous. While the Board referred to a strain unusual in the course of decedent's employment, it is not clear whether the Board was referring to activities unusual for this particular employee or, rather, to activities unusual in the course of the employee's occupation as a whole. The Board did not explicitly address itself to that determination.

The Board erred if it failed to consider whether the activities which precipitated decedent's heart attack constituted an unusual strain for him. See *Hamilton v. Procon*, 434 Pa. 90, 252 A. 2d 601 (1969); *Mapp v. Philadelphia*, 215 Pa. Superior Ct. 101, 257 A. 2d 306 (1969).

In *Hamilton*, the Board and the lower court held that a disability which was caused by a strain encountered in the course of a claimant's employment was not compensable unless the strain or over-exertion was unusual to the general occupation of the employee. Our Court affirmed the lower court by per curiam order, with only one judge dissenting. The Supreme Court, however, reversed our Court and held that the strain must only be unusual for the claimant for a resulting disability to be compensable. Thus, *Hamilton* made irrelevant any consideration of whether other members of a claimant's occupation incurred such strain on a usual basis.

The Board's opinion in the instant case was filed on February 1, 1968, prior to the Supreme Court decision in *Hamilton*.

We cannot believe, therefore, that in the instant case the Board rejected its prior statements of the law in *Hamilton*, which had been affirmed by us, and adopted a standard as yet unenunciated by the Supreme Court.

Instead, common sense dictates that the Board erred and adopted the industry-wide standard which they had applied in *Hamilton* and in many other cases prior to the Supreme Court opinion in *Hamilton*.

This apparent error is not mooted by the evidence already presented to the Board that decedent did on infrequent occasions deliver heavy orders involving much physical exertion to other customers. This fact, standing alone, fails to establish that decedent did not suffer an "unusual strain."

President Judge KELLER speaking for this Court in *Foster v. State College Borough*, 124 Pa. Superior Ct. 492, 189 A. 786 (1937), stated general principles which determine what is an "unusual" exertion. "The trouble seems to be due to an attempt to apply to an irregular, unusual and intermittent employment, . . .

the rules applicable to regular and usual occupations, and because fitfully or spasmodically, at irregular times, (an employee) may be called upon to do work which requires great or unusual exertion, to hold that such unusual exertion is his regular, normal activity. No such rule should be applied . . . (In all of the cases cited wherein an employee was awarded compensation) it must not be thought that the employee had never before done what he was doing when his overexertion resulted in death; but it was not his usual regular, everyday work. Frequently such men are required to do something out of the ordinary line of their work, requiring extra exertion, and no harm comes from it; but when something does go wrong in the body as a result of such extra overexertion, the law regards it as accidental for purposes of workmen's compensation."

This statement does not conflict with *Billick v. Republic Steel Corp.*, 214 Pa. Superior Ct. 267, 257 A. 2d 589 (1969). In *Billick* we noted that "an accident may not be inferred from the fact that an employee sustains a heart attack as the result of exertion necessary for the performance of his usual duties (citations omitted). The doing of an occasional act involving sustained muscular effort may be part of the usual duties of a workman and though the work is hard, if it is of the same kind and quantity and done in the same manner as it has been performed in the past, disability resulting from the exertion does not constitute an accident." At 271.

In both *Billick* and *McGowan v. Upper Darby Pet Supply*, 207 Pa. Superior Ct. 329, 217 A. 2d 846 (1966), upon which *Billick* relies, this Court sustained the Board's denial of benefits to the claimants on the grounds that their disability did not result from unusual exertion. In both instances, however, the claimants performed heavy and hard labor as a matter of course. In *McGowan*, the claimant, a meat cutter,

himself conceded that his disability occurred from a strain resulting from his "doing my regular work . . . nothing unusual happened, just my regular work." Similarly the claimant in *Billick* was employed to remove wooden supports on bridges and in the course of one such operation he suffered a heart attack.

In the instant case, however, the evidence presented to the Board, indicates that decedent was not performing a usual duty when he made the delivery which precipitated his heart attack. Rather, the decedent was performing an emergency service and was not engaged in the "performance of his customary work." This finding would be predicated on a determination that the delivery was made by decedent only because the two boys in the store who usually performed all the heavy work were unavailable.

Such findings, however, should be made in the first instance by the Board.

The law in this regard was set forth in *Miterko v. Jeddo-Highland Coal Co.,* 201 Pa. Superior Ct. 384, 192 A. 2d 421 (1963). In *Miterko* the Workmen's Compensation Board misconstrued the law and denied benefits to the widow-claimant. We remanded the case for reconsideration in light of the proper rule of law. Judge WOODSIDE speaking for the court stated "We have carefully reviewed the evidence and conclude that under it the board could decide either for or against the widow-claimant on this point. It found against her. In doing so, however, it applied an erroneous rule of law which goes to the heart of the decision. We have no way of determining whether the board would have come to the same conclusion had it applied the correct rule. . . . Had the board applied the principles expressed in these cases dealing with (the applicable section of the Act), it might have come to a different conclusion. As we have no way of determining what it would have found, we must return

the record to the board in order that it may apply the correct test to the evidence which it believes." At 385-386.

Accordingly, this case is remanded to the Workmen's Compensation Board for reconsideration in light of *Hamilton v. Procon,* supra.

Case remanded.

---

DISSENTING OPINION BY MONTGOMERY, J.:

I dissent from the action of the majority in remanding this case to the Board for further proceedings. I believe that the only issues before our Court on this appeal are questions of law which should be decided by us, regardless of the Board's possible misapprehension of the unusual strain doctrine. The scope of appellate review in these cases has been stated as follows. Where the compensation authorities have found against the party having the burden of proof, the question on appeal is whether the Board's findings of fact are consistent with each other and with its conclusions of law and can be sustained without a capricious disregard of the competent evidence. *Billick v. Republic Steel Corporation,* 214 Pa. Superior Ct. 267, 257 A. 2d 589 (1969) ; *Hale v. Metalweld, Inc.,* 212 Pa. Superior Ct. 20, 239 A. 2d 887 (1968). I believe that these principles are consistent with both *Hamilton v. Procon, Inc.,* 434 Pa. 90, 252 A. 2d 601 (1969), and *Mapp v. Philadelphia,* 215 Pa. Superior Ct. 101, 257 A. 2d 306 (1969).

In *Hamilton* the Board found that death had been precipitated by unusual exertion and effort. The Supreme Court on review did not remand that case to the Board for reconsideration under the unusual strain doctrine, but it applied the unusual strain doctrine "according to the work history of the individual involved and not according to the work patterns of his profession in general" to the finding of fact already

made by the Board, and reversed the Board. However, in this case, the Board did not find that the decedent's death was precipitated or caused by unusual exertion or effort. On the contrary, it affirmed the referee's finding of fact No. 3, ". . . Part of his [Harry Berger] regular duties for several years was to make up orders for customers and, on occasion to deliver orders to the customers in his automobile." Therefore, on this appeal, it is our duty to examine the evidence and determine whether the Board capriciously disregarded any competent evidence in making its findings or in failing to make a finding on which claimant's claim can be based. I do not find that our action in remanding the case of *Mapp v. Philadelphia*, supra, for reconsideration in light of *Hamilton* was inconsistent. In that decision we found, in effect, that the Board had capriciously disregarded competent evidence in claimant's favor.

I have examined the record in this case and have found no facts to indicate that the decedent sustained an unusual strain doing his work. There is no competent evidence in the record to overturn the Board's finding that occasional delivery of groceries was a part of his regular duties. The size of the cardboard carton and the grocery bag do not impress me as being unusually large. Furthermore, in my opinion, there is no other competent evidence in the record which the Board might have capriciously disregarded in failing to make the finding that the decedent suffered an unusual strain.

I would reverse the judgment and reinstate the order of the Workmen's Compensation Board denying compensation.

WRIGHT, P. J., and WATKINS, J., join in this dissent.