Poltorak, et ux., Appellants, et al. *v.* Sandy.

356

Argued June 18, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Harold B. Vikoren,* for appellants.

*Richard P. McBride,* with him *William B. Moyer,* and *Power, Bowen & Valimont,* for appellee.

*George M. Bush,* for additional defendant, Frank S. Poltorak, appellee.

358 

Opinion by Van der Voort, J., September 22, 1975:

On the evening of December 24, 1966, Frank S. Poltorak and his wife Marion, their son Frank J. Poltorak, Sr. and his wife Carol, son Frank J., Jr. and daughter Diane, and the Frank S. Poltoraks' grandson Bernard B. Barron, Jr., were all bound for the Frank S. Poltoraks' home in Churchville, Pennsylvania, and a Christmas Eve dinner. With Frank S. Poltorak at the wheel of his 1966 Ford Galaxie, the party was proceeding north along York Road in Warminster, Bucks County, in the midst of a heavy snowstorm. Marion Poltorak was seated in the front seat next to the door with Bernard in her lap; Frank J., Jr. was seated between Frank S. and Marion Poltorak. Snow had been falling throughout the day, and the wind had piled the snow in banks approximately two feet high along the edges of the road and in the center over a "singing" medial strip.

As the Poltorak car was proceeding north on York Road, a 1965 Fiat, driven by William P. Sandy, Jr. and containing his pregnant wife Rita, was proceeding south on York Road. The Fiat was equipped with a windshield defroster that had only one center vent to clear the entire windshield; consequently, Mr. Sandy was obliged to carry a rag in the car for the purpose of assisting the defroster in clearing the outer areas of the windshield. As the Fiat approached the intersection of York Road and Fourth Street, William Sandy and his wife were both busily engaged in wiping the windshield. Though Mr. Sandy was apparently traveling at a speed of only 15-20 miles per hour, because of the blowing snow and also possibly due to the fact that he was devoting some attention to cleaning the windshield, Mr. Sandy failed to see an object in the intersection ahead of him until it was too late to avoid striking it. The object turned out to be the automobile being driven by Frank S. Poltorak.

Although the snow covered the medial strip in the center of York Road, apparently there was a sufficient

break in the area of the intersection to allow the Poltorak car to turn left from York Road onto Fourth Street. As the Poltorak car made the turn and crossed the center of the highway, the car stalled. Restarted, the car (which had an automatic transmission) moved ahead only a few feet—sufficient to block the southbound lane of York Road—before the car stalled again. At this point, after Mr. Poltorak had turned off the heater-defroster and the radio, and was reaching for the key in the ignition to attempt to restart the engine, the car was struck on the right side by the automobile being driven by William Sandy.

Frank Poltorak, his wife Marion, and the three minor children who occupied the Poltorak car at the time of the accident, brought suit against William P. Sandy, Jr.; the latter joined Frank S. Poltorak as an additional defendant. After a trial which lasted from September 20 to September 27, 1971, the jury returned a verdict of $800 against William P. Sandy and Frank S. Poltorak in favor of the three minor children, and a verdict of $15,000 against the same Mr. Sandy and Frank S. Poltorak in favor of Marion E. Poltorak. The case is before us on the appeal of plaintiffs Frank S. Poltorak and Marion E. Poltorak.

Appellants first allege that the evidence presented at trial was not sufficient to support a finding that Frank S. Poltorak was contributorily negligent in causing the accident. A review of the record reveals testimony from which the jury could have concluded that Mr. Poltorak was negligent in not using due care in crossing the highway or in taking too much time to restart the engine and move his car into a position of safety. Although the evidence was not uncontradicted, the jury could justifiably have determined that Mr. Poltorak was negligent in making a very sharp turn over a ridge of snow, across a lane of traffic, while traveling at a very low rate of speed (one or two miles per hour), at a time when visibility was extremely poor due to blowing snow. Testi-

mony indicated that after the car had stalled once, Mr. Poltorak restarted the engine and was able to move the car only a few feet before it stalled again. After the car stalled the second time, Mr. Poltorak turned off the radio and heater before attempting to restart the car. The jury could have found that Mr. Poltorak was negligent in taking too much time to restart the engine after the car stalled the second time. We should not reverse in this case unless we find incontrovertible physical facts or other evidentiary circumstances of such weight as to convince us that an injustice has been done. *Mapp v. Wombucker*, 421 Pa. 383, 219 A.2d 681 (1966). Although there was conflicting testimony as to visibility and the condition of the road at the time of the accident, it is the function of the jury to reconcile conflicting testimony if possible and to resolve questions of credibility where reconciliation cannot be accomplished. *Mapp, supra.* We find that there was sufficient evidence presented at trial from which the jury could have concluded that Frank S. Poltorak was contributorily negligent in causing the accident, and we will not usurp the function of the jury.

Appellants further argue that even if Frank S. Poltorak were contributorily negligent, this negligence was not a proximate cause of the accident. The Restatement of Torts, 2d, §465(1) states:

> "The plaintiff's negligence is a legally contributing cause of his harm if, but only if, it is a substantial factor in bringing about his harm and there is no rule restricting his responsibility for it.[1]"

---

1. Section 465 goes on to say:

"(2) The rules which determine the causal relation between the plaintiff's negligent conduct and the harm resulting to him are the same as those determining the causal relation between the defendant's negligent conduct and resulting harm to others." See *Whitner v. Lojeski*, 437 Pa. 448, 455, 263 A.2d 889 (1970) for the Supreme Court's discussion of Restatement (Second) §431, "What Constitutes Legal Cause".

There is no rule of law which might absolve Mr. Poltorak of negligence, and reasonable men could certainly have found that the negligent action of Mr. Poltorak which resulted in the car which he was driving being stalled so as to block a lane of traffic was a substantial factor in causing the accident. Since the lower court judge properly instructed the jury on the issue of proximate cause and contributory negligence, this Court will not say that as a matter of law the negligent conduct of Frank S. Poltorak was not a proximate cause of the accident.

Appellants argue that the lower court erred in refusing to admit into evidence certain bills for services rendered to Marion Poltorak by her personal physician, Dr. Andrew A. Doering. The bills, which totaled $946.08, were for visits made by Mrs. Poltorak for treatment of a variety of ailments, including asthmatic bronchitis, colds, acute diarrhea, and hives, as well as for her accident-related problems. Defendant's attorney objected to the admission of these bills because of the inability of Dr. Doering to specify which bills and which parts of bills were attributable to accident-related treatments. Plaintiffs' attorney asked the doctor on direct examination whether the latter could separate the bills or whether they were intertwined, and the doctor replied: "I am afraid they are intertwined and it would be one of my headaches on trying to figure this out." Our Supreme Court has said that plaintiffs must "individuate the injuries and damages . . . not with absolute exactitude, but at least with reasonable approximation, and . . . damages may not be based on a mere guess or speculation; the proof must be of a character to enable an intelligent separation of the damages caused by the negligence complained of from those otherwise sustained . . ." *McGuire v. Hamler Coal Mining Co.,* 355 Pa. 160, 162-63, 49 A.2d 396, 397 (1946) (citations omitted). In the case before us, the trial judge did not abuse his discretion in refusing to admit into evidence bills for medi-

cal expenses when neither plaintiffs nor her physician could make a reasonable showing of which bills were for accident-related treatments and which were for unrelated treatments.

Appellants further allege that the trial judge erred in refusing to permit the admission into evidence of bills for certain physical therapy treatments which had been administered to Marion E. Poltorak. In pre-trial interrogatories, the defendant had asked for an itemization of all damages sustained as a result of the accident. Plaintiffs' attorney failed to include in his answer to the interrogatories a claim for *continuing* physical therapy treatments. At the time of the pre-trial conference, plaintiffs were required by the local rules of court to submit a written memorandum containing a specification of all damages for which a claim was being made. Although plaintiffs' memorandum did include a claim of $147 for physical therapy, no mention was made at this time either, of the fact that the therapy would continue. When an attempt was made at trial to introduce into evidence those bills for treatments which had been administered between the date of the pre-trial hearing and the start of the trial, defendant's attorney objected to the admission of those bills, and the objection was sustained. The bills which were excluded totaled $777. Inasmuch as Mr. Poltorak cannot recover on his claims—due to the jury's finding that Mr. Poltorak was contributorily negligent—it is unnecessary for us to decide the correctness of the ruling of the trial judge with respect to these particular bills.

Appellants' third allegation of trial error is that the lower court judge should not have admitted into evidence the employment record of Marion E. Poltorak through the testimony of a person who was not the actual custodian of the records at the time of trial. Mrs. Poltorak had been employed by Rosenau Brothers, Inc. of Philadelphia throughout 1966; during that year, prior to the

accident on December 24, she had missed work a total
of thirty-two days. Testimony regarding these absences
came from an employee of Rosenau Brothers, Miss
Evelyn Apt. Miss Apt testified that she had been the
personnel director for Rosenau Brothers throughout
1966, and that the company's employment records, in-
cluding Mrs. Poltorak's, had been under her control and
supervision throughout that period. Approximately
seven months prior to trial, Miss Apt's job had been
formally discontinued and supervision of the records had
been transferred to an Industrial Relations Manager,
while Miss Apt assumed a different position with the
company. Miss Apt testified at trial that she still had
access to the records in question and that she was occa-
sionally called upon for information which she would
obtain from the records which had previously been in
her custody. The Uniform Business Records as Evidence
Act states: "A record of an act, condition or event shall,
insofar as relevant, be competent evidence if the custo-
dian *or other qualified witness* testifies to its identity
and the mode of its preparation, and if it was made in
the regular course of business at or near the time of the
act, condition or event, and if, *in the opinion of the court,*
the sources of information, method and time of prepara-
tion were such as to justify its admission." Act of May
4, 1939, P.L. 42, 28 P.S. §91b (emphasis added). It is
apparent from the wording of the Act that the Legis-
lature intended to grant the trial courts a certain amount
of discretion in deciding whether or not to admit busi-
ness records. *Henderson v. Zubik*, 390 Pa. 521, 136 A.2d
124 (1957). There has been no allegation made that the
records in question were inaccurate—no allegation that
Mrs. Poltorak had not missed all the time which the
records indicated she had missed; furthermore, although
Miss Apt was not actually the "custodian" of the em-
ployment records, she had been the custodian of the
records during the period of Mrs. Poltorak's employment

and at the time of trial still had ready access to the records. We therefore find that Miss Apt was a "qualified witness" within the meaning of §91b of the Uniform Business Records as Evidence Act and that the lower court properly admitted the records into evidence.

Appellants' final argument is that the amount of damages awarded Mrs. Poltorak by the jury was not sufficient compensation for the injuries she incurred as a result of the accident, and that the lower court was therefore in error in denying appellants' motion for a new trial. Our Supreme Court has said: "It is well settled that a motion for new trial is addressed to the sound discretion of the trial court; the denial of such a motion will not be reversed absent a clear abuse of discretion or error of law." *Wilson v. Nelson*, 437 Pa. 254, 256, 258 A.2d 657, 658, 263 A.2d 116 (1969). We find no error of law in the case before us, and we will find an abuse of discretion on the part of the lower court in denying the motion only if the record indicates that the jury was influenced by partiality, passion, prejudice, or some misconception of the law or evidence. *Austin v. Harnish*, 227 Pa. Superior Ct. 199, 202, 323 A.2d 871 (1974).

Following the accident, Mrs. Poltorak was treated by her personal physician, Dr. Andrew Doering, for a period of several months. Because of continued pain in the back, neck, and right arm and leg, Mrs. Poltorak was admitted to Holy Redeemer Hospital, where she remained from May 29, 1967 until June 11, 1967. During her stay in the hospital, Mrs. Poltorak underwent extensive therapy and testing. Because of the patient's continued complaints of pain, in August of the same year Dr. Doering referred her to an orthopedic surgeon, Dr. Michael Joyce. On the advice of Dr. Joyce and another orthopedic surgeon, a hemilaminectomy was performed on Mrs. Poltorak, which resulted in the removal of disc material from the L-5, S-1 interspace of her back. In April of 1969, on the advice of yet another doctor, a neuro-surgeon who was

called in for consultation, a second operation, a discoidectomy, was performed and more disc material was removed. From the time of the operation until the time of trial, Mrs. Poltorak continued to see her physicians at regular intervals, and continued the physical therapy treatments. Both Doctor Doering and Doctor Joyce testified that they thought Mrs. Poltorak would continue to experience pain, and would be unable to return to her previous job or to any job which required her to be either seated or standing for any length of time.

In rebuttal of plaintiffs' evidence of damages, the defense called to the witness stand Dr. Nathan S. Schlezinger, who testified regarding a physical examination which he had made of Marion Poltorak on August 19, 1969. When asked on direct examination for his medical opinion of the patient, the doctor replied:

"The conclusion on the basis of this survey was that the patient had no evidence of physical disease of the nervous system except for the evidence noted in the right leg indicating some root involvement in that extremity. In other words, that the involvement of that extremity showed—there was some root involvement. This was not conspicuous but it was there, so that would be my own examination of the patient, combined with that of the history and the review of the medical records. It is my opinion that this is not attributable to injury and that there are other factors that would be able to explain that involvement in the leg. There were findings outside of that which were definitely not physical in origin, such as the weakness of the right arm. That was able to be eliminated by an appropriate examination of the patient."

Direct examination of the doctor continued:

"Q. Doctor, when you say there were findings that you made outside of those that could be classified physical in origin, what do you mean?

"A. Well, that they are psychogenic. They are not reflecting any physical disease of the nervous system and must be attributed to psychiatric or emotional factors.

"Q. Doctor, based on your examination of the patient and your own expertise and the examination of the medical records, do you have an opinion as to whether or not this particular patient will be disabled in the future?

"A. No, *it was my considered opinion that the degree of disability could not be considered significant beyond a relatively minor degree and it was my opinion that every effort should be made to resume a full program of normal activities.*" (Emphasis added).

Dr. Schlezinger was certified in both neurology and psychiatry, and had written approximately forty articles in those two areas of medicine. The jury could very well have been impressed with the doctor's credentials, given more credence to his testimony than to the testimony of Mrs. Poltorak's own doctors, and decided not to make an award for future loss of earnings. Since Mrs. Poltorak had been earning approximately $4,500 per year before the accident, the jury might have found that she was entitled to $12,000 as compensation for lost earnings ($4,500 multiplied by the 2⅔ years which had elapsed prior to Dr. Schlezinger's examination), and then added $3,000 for pain and suffering. Although this amount is on the low side, it is substantial and is not so low as to require a reversal.

Since we find no error in any of the trial judge's rulings, since there is ample evidence in the record to support the jury's finding that Mr. Poltorak was contributorily negligent in causing the accident, and since the amount of damages awarded was not so low as to indicate that the jury was influenced by partiality, passion, prej-

udice, or a misconception of the law or evidence, we therefore affirm the judgment of the lower court.

———

DISSENTING OPINION BY HOFFMAN, J.:

This is an appeal from a verdict in favor of the appellant Marion E. Poltorak in the amount of $15,000.00 for injuries suffered in an automobile accident.

The accident occurred on a snowy Christmas Eve, on December 24, 1966, at approximately 8:30 p.m. Plaintiffs testified that they were proceeding north on York Road in Warminster, Bucks County. They described the highway as lined with mounds of snow two feet high along the center and sides. Intending to make a left turn, the plaintiffs observed a 50-foot opening in the mound of snow in the center of the highway. They testified that they could see for about 300 feet and saw no oncoming traffic. While plaintiffs attempted to negotiate the turn, the car stalled with its front protruding into the southbound lanes. The operator of the vehicle, Frank J. Poltorak, said he shut off his heater, radio and wipers and tried to start the car up again. The defendant's vehicle struck the plaintiffs' stalled automobile at the middle of the passenger side.

Defendant William P. Sandy, Jr. told a different story. He stated that it was snowing heavily and that visibility was only about 25 feet. He testified that as he was proceeding in the southbound lane, he suddenly saw the plaintiffs' vehicle when he was almost upon it, and stated that he could not avoid skidding into the automobile upon applying his brakes. Police testified that the weather conditions were far worse than described by the plaintiffs. They stated that visibility was no more than 25-35 feet in either direction, and that there was a heavy, driving snowstorm at the time of the accident. Both police officers who came upon the scene stated that they saw no "opening" in the snow mounds, and that the rear of

plaintiffs' vehicle was actually in or about a deep snow bank.[1]

Plaintiffs brought a suit for personal injuries to Mrs. Poltorak against the operator of the striking vehicle. The defendant Mr. Sandy joined Mr. Poltorak, the operator of plaintiffs' car, as an additional defendant. The jury determined that Mr. Poltorak had been contributorily negligent, but awarded Mrs. Poltorak $15,000.00 against both the defendant and her husband.[2] Plaintiffs have appealed from that verdict.

### Contributory Negligence

Appellant Frank J. Poltorak contends that there was insufficient evidence to establish that he was contributorily negligent or that such negligence was a proximate cause of the accident. In refusing post-trial motions, the trial court reasoned:

"On this record the jury could well have concluded that a reasonable driver exercising due care would not have chosen to negotiate a difficult turn through a large mass of snow under dangerously poor conditions of visibility and then at an inordinately low rate of speed; that Mr. Poltorak's efforts, once the car stalled, were also negligent; and that his negligent driving was the cause of the car's blocking the southbound side of the highway, which was, clearly, a proximate cause of the accident."

In considering the grounds for reversal, the trial court properly read the evidence in the light most favorable to the verdict-winner, rejecting all unfavorable testimonial evidence. *Glass v. Freeman*, 430 Pa. 21, 240 A.2d 825 (1968). There was ample evidence for the jury to believe that the weather and road conditions were far worse than

---

1. It was brought out on cross-examination that Mr. Poltorak, in an earlier deposition, had stated that the car stalled when it "hit a snow bank or something."

2. A combined verdict of $800.00 for minor plaintiffs was not appealed.

the plaintiffs described them to be. The jury may have determined that under these severe conditions and in the path of a deep snow mound, plaintiffs negligently endeavored to make a sharp left turn into the lanes of opposing traffic. We may not, as a reviewing court, disturb a jury verdict which resolves conflicting evidence primarily of a testimonial nature. *Mapp v. Wombucker*, 421 Pa. 383, 219 A.2d 681 (1966). It is not, after all, this Court's function to substitute its own judgment of the facts where the jury verdict is premised on evidence appearing of record. *Skoda v. West Penn Power Co.*, 411 Pa. 323, 191 A.2d 822 (1963).

Appellants argue that their negligence should not preclude recovery unless it proximately caused the accident. This is, of course, a valid argument under the law to which we readily agree. See, *McCoy v. Philadelphia Electric Co.*, 447 Pa. 490, 291 A.2d 759 (1972). The record reveals a proper charge of the court on this legal issue. The trial judge adequately instructed the jury that any contributory negligence had to be a proximate cause of the accident in order to preclude relief.

Appellants contend that even if husband-plaintiff was contributorily negligent, the verdict itself was grossly inadequate.

*Alleged Trial Errors on Admissibility*

Plaintiffs attribute the inadequacy of the verdict to three alleged trial errors. At the conclusion of the plaintiffs' case, counsel attempted to offer all the bills for services rendered by Marion Poltorak's personal physician, Dr. Doering. The bills, spanning a period of time from the date of the accident to the date of the trial, totalled $946.08. During the trial, neither the plaintiffs nor Dr. Doering could allocate which of the visits represented the treatment of routine ailments and those which were for the injuries suffered in the accident. Mrs. Poltorak admitted that on a number of occasions she saw her family physician for colds, diarrhea, headaches and

bronchitis. The admission of evidence is within the sound discretion of the trial court, and such discretion is not abused where a plaintiff is unable to make a reasonable showing that the damages reflect the injuries sustained in an accident. The calculation of damages and the allocation of medical expenses between legitimate and nonrelated treatments may not be left to the jury's speculation. *McGuire v. Hamler Coal Mining Co.*, 355 Pa. 160, 49 A.2d 396 (1946).

Plaintiffs also complain that the trial court erred in excluding evidence of physical therapy treatments administered to Marion Poltorak. During the plaintiffs' case, testimony was permitted to describe the continuous and extensive treatments by a physiotherapist for the injuries Mrs. Poltorak suffered. When counsel sought to introduce bills, defense counsel objected on the ground of surprise. It appears from the record that this offer was the first notice to the defendant of such expenses. In pre-trial interrogatories, defendant had asked for itemized damages, and no mention had been made of these treatments. The defendant's interrogatories, consistent with recognized practice, were expressly framed as of a "continuing nature", so that any additional bills incurred after answers were filed should be supplemented. Furthermore, at the time of the pre-trial conference, plaintiffs did not mention these expenses in its memorandum. This was in contravention of the local rule of court, Bucks Co. R.C.P. *212 requiring such a memorandum to contain "a specification of all damages claimed." Under the circumstances, I do not believe the trial judge abused his discretion in refusing this late offer of bills unmentioned in any of the foregoing proceedings.

Finally, appellants contend that the trial court erred in allowing the introduction of employment records by a witness who was not the records custodian. The Uniform Business Records as Evidence Act, 28 P.S. §91(b), permits the admission of business records, hearsay evidence,

only "... if the custodian or *other qualified witness* testifies to its identity and the mode of its preparation ..." (Emphasis added). The employer's record custodian was not present at the trial. Instead, Miss Apt, who had been records custodian and personnel director at the time of Mrs. Poltorak's employment, offered the records into evidence. I believe that on the basis of this witness' prior experience and on the testimony given by this witness, such records were offered by a "qualified witness" within the meaning of the Act.

I do not believe that any of the specifically-ascribed trial court rulings constituted reversible error. I do, however, find that the amount of the award, in light of the uncontradicted evidence, is patently and grossly inadequate.

### Adequacy of the Verdict

Following brief outpatient treatment, Mrs. Poltorak returned home on the night of the accident in considerable pain. She spent the next two days in bed. When her condition did not improve, Mrs. Poltorak consulted her family physician, Dr. Doering, who observed a three to four-inch diameter bruise in the right lumbar area of her back and other bruises on her thigh. During the next few months, Dr. Doering saw his patient at regular intervals, and prescribed a Thomas Collar, medication, hot packs, physical therapy and outpatient traction. Because of continued pain in the neck, back and right extremities, Dr. Doering admitted Mrs. Poltorak to Holy Redeemer Hospital on May 29, 1967. She remained in the hospital until June 11, 1967, when she underwent extensive physiotherapy, pelvic traction and x-rays. After her discharge, she continued with out-patient traction and treatments with Dr. Doering for the next two months.

In August, 1967, concerned with indications of worsening pain and numbness, Dr. Doering referred Mrs. Poltorak to an orthopedic surgeon, who saw her on

September 1, 1967. She was admitted to Holy Redeemer Hospital, where she underwent a hemilaminectomy at the L-5, S-1 interspace.[3] In early 1968, Mrs. Poltorak began to experience more pain in her leg, back and neck. She was readmitted to Holy Redeemer on May 28, 1968 for another myelogram, x-rays, physiotherapy and other tests. She was discharged on June 18, 1968, but because of continued pain and numbness, Mrs. Poltorak was admitted to Nazareth Hospital, on March 31, 1969. A consulting neurosurgeon identified nerve root irritation, and performed a discoidectomy removing disc material from the point of the irritation.

Following surgery, Mrs. Poltorak continued to see her physicians at six-week intervals up to the time of the trial. Mrs. Poltorak testified that on their advice she continued physical therapy and outpatient cervical traction. The pain in the affected area continued to the date of trial with severe pain in the instep of her right foot and cervical pain necessitating the wearing of a collar.

In the opinion of her orthopedic surgeon, Mrs. Poltorak's condition would persist and worsen with time. The prognosis was continued medical attention with an eventual spinal fusion. The defendant's expert witness, a physician who had examined the plaintiff on one occasion, testified that he found Mrs. Poltorak cured of her injuries. He stated that he neither anticipated any need for future medical care nor could find any reason why her disability would prevent gainful employment. He diagnosed plaintiff's complaints as "psychogenic".

Prior to the accident, Mrs. Poltorak, a 52-year-old woman, was a vibrant person, employed as an inspectress in charge of forty employees. Her health had been good, with no prior back, neck or leg problems. Her orthopedic surgeon testified that it was his opinion that her condition

---

3. A hemilaminectomy is defined as the surgical removal of half of the posterior arch of a vertebra in the spinal column.

prevented his patient from carrying out her duties as an inspectress or supervisor since the job required prolonged walking and standing on her feet. He also stated that a sedentary job would not be possible either, since "[m]echanically, she can't stay at any fixed position for any length of time."

In short, the testimony of expert witnesses on each side were in direct conflict. Since the testimony of the defendant's medical witness was limited solely to his examination of the plaintiff prior to trial, and since the diagnosis concerned only his opinion of her present and future condition, no contradictory evidence was present to rebut the serious injuries and disabilities suffered by the plaintiff from the date of the accident until the date of trial. In the face of the dismal predictions of plaintiff's continuing disability, the jury was certainly within its power to disbelieve the plaintiff and her witnesses and choose to believe the optimistic report of the defendant's expert. This would account for the failure of the jury to award a substantial verdict for *future* loss of earnings, medical expenses, and pain and suffering.

There is, however, no basis upon which the jury could ignore the history of this plaintiff from the date of the accident until the trial. Her prior good health and work experience glaringly differed from the debilitated, injury-ridden woman that had to be admitted to hospitals for extended in-patient treatment and major surgery on three occasions during the three years following the accident. Her inability to work during this period of time was unchallenged.

What then may be seen as the "admitted" damages suffered by the wife-plaintiff as a result of this accident? Even discounting an amount for future damages, Mrs. Poltorak was entitled to compensation for her lost wages and for pain and suffering associated with her condition. At time of trial, plaintiff had been unable to work for nearly four and one-half years. Her earnings had been

approximately $4,500.00 a year, or about $20,000.00. Although the verdict against her husband prevented the recovery of the medical expenses incurred to date of trial and received in evidence ($5,988.95), she was certainly entitled to a considerable amount for pain and suffering as compensation for the trauma to her psyche and for the ordeal of repeated hospitalizations and involved surgery. The verdict of $15,000.00 does not even compensate the plaintiff for her lost wages. It ignores entirely any claims for future loss. I believe, under the circumstances, that the verdict was inadequate and that the "injustice of the verdict stand[s] forth like a beacon." *Elza v. Chovan,* 396 Pa. 112, 152 A.2d 238 (1959).

I am not unmindful of our duty to proceed with great caution in reviewing the action of the trial court which refuses a new trial on the ground of inadequacy. *Austin v. Harnish,* 227 Pa. Superior Ct. 199, 323 A.2d 871 (1974). As we said in *Rhoades v. Wolf,* 207 Pa. Superior Ct. 104, 107, 215 A.2d 332 (1965): "A verdict in an action for a personal tort may be set aside as inadequate when, and only when, it is so inadequate as to indicate passion, prejudice, partiality, or corruption, or the jury disregarded the instructions of the court, or where there was a vital misapprehension or mistake on the part of the jury, *or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by plaintiffs, or where the award is so inadequate that it should not be permitted to stand,* or where otherwise there has been an evident failure of justice to the plaintiff." (Emphasis added).

While there is nothing in the record to indicate passion or prejudice on the part of the jurors, I am unable to conclude that the verdict bears a reasonable relation to the uncontradicted evidence of plaintiff's condition following the accident. Furthermore, even should the maladies complained of by Mrs. Poltorak at the time of trial be "psychogenic", some compensation should have

been awarded for the psychological and emotional injury to the plaintiff as a result of the accident. See, *Mapp v. Philadelphia*, 215 Pa. Superior Ct. 101, 257 A.2d 306 (1969). In light of the disabling spinal injuries and the extensive surgery involved in this case, I would set aside the verdict on the grounds of inadequacy.[4] Since I believe that the verdict of the jury on the issue of liability was properly justified, I would reverse and remand the case for a new trial limited to damages alone. See *Troncatti v. Smereczniak*, 428 Pa. 7, 235 A.2d 345 (1967).

CERCONE, J., joins in this dissenting opinion.

---

4. In *Boudwin v. Yellow Cab Co.*, 410 Pa. 31, 188 A. 2d 259 (1963), our Supreme Court held that a verdict of $16,000.00 for similar spinal injuries was inadequate, even though the amount fully reimbursed the plaintiff for her wage loss and medical expenses. The failure to award significant damages for pain and suffering appears to have been the underlying consideration in the Court's decision to remand the matter for a new trial.

---

DISSENTING OPINION BY SPAETH, J.:

I join in the reasoning of Judge HOFFMAN'S opinion but would impose a condition on the order to remand.

This case illustrates the unsatisfactory situation that may arise where the courts rely exclusively on expert witnesses called by the parties. This system of adjudication has been justifiably labeled a failure. 2 Wigmore, Evidence, §563 (Collecting authority and remedial statutes) ; McCormick, Evidence, §17 (Cleary ed., 1972).

There is, unfortunately, no procedure in Pennsylvania by which a trial court may appoint and compensate independent expert witnesses. (The federal trial courts do have such a procedure. Fed.R.Evid. 706).

This court has the power, however, to modify an order brought before us on appeal. Act of July 31, 1970, P.L. 673, No. 233, art. V, §504, 17 P.S. §211.504 (Supp. 1974-1975). This power includes by necessary implica-

tion the power to impose conditions, as in the case of a remittitur. *See* 6A Standard Pennsylvania Practice 278-79 (collecting cases). The imposition of conditions is especially appropriate where, as here, the trial judge has made no error and lacks statutory authority to take the action that perhaps more than any other will prevent a recurrence at a new trial of the problems that precipitated the appeal.

I would therefore provide that as a condition of remand appellant agree to compensate an independent expert witness to be appointed by the court. This would leave appellant with an option. If she did not wish to run the risk of a new trial at which an independent expert would testify, or incur the expense of the expert, she could keep the judgment she now has. I grant that this solution is not entirely satisfactory, but on the record before us I regard it as better than either an affirmance or an unconditional remand.