## In Re Anonymous No. 25 D.B. 84

Disciplinary Board Docket No. 25 D.B. 84.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

PADOVA, *Member*, December 3, 1985—Pursuant to Pennsylvania Rule of Disciplinary Enforcement, 208(d) the Disciplinary Board of the Supreme Court of Pennsylvania (board) submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

A petition for discipline was filed against respondent on March 26, 1984, charging him with violations of D.R. 1-102(A)(3) (illegal conduct involving moral turpitude), D.R. 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation), D.R. 1-102(A)(5) (engaging in conduct that is prejudicial to the administration of justice), D.R. 1-102(A)(6) (engaging in other conduct that adversely reflects on his fitness to practice law), D.R. 7-101(A)1 (intentionally failing to seek the lawful objectives of his client), D.R. 7-101(A)(2) (intentionally failing to carry out a contract of employment), D.R. 7-101(A)(3) (intentionally damaging his client during the course of the professional relationship), D.R. 7-102(A)(5) (knowingly making a false statement of law or fact), D.R. 7-102(A)(8) (knowingly engaging in other illegal conduct or conduct contrary to a disciplinary rule), D.R. 9-102(A) (failing to deposit client's funds in an identifiable bank account), D.R. 9-102(B)(1) (failing to promptly notify a client of the receipt of funds), D.R.

9-102(B)(2) (failing to identify properties of a client and placing them in safekeeping), D.R. 9-102(B)(3) (failing to maintain complete records of client's funds) and D.R. 9-102(B)(4) (failing to promptly pay or deliver to a client funds which the client is entitled to receive).

Essentially, these charges grew out of respondent's representation of one [A] in a lawsuit against [B] Steel, commenced in August of 1980. The lawsuit asserted a racially motivated discharge of [A] by [B] Steel in violation of Title 7 of the Civil Rights Act of 1964. [A] had received a notice of right to sue from the Equal Employment Opportunity Commission, which had found a reasonable basis to believe that [A]'s race was a factor in his discharge. Petitioner claimed that the federal action had been settled in the summer of 1981 by respondent for $60 without the knowledge, authorization or consent of his client. Moreover, so claimed petitioner, a settlement agreement and general release dated July 11, 1981 containing the forged signature of his client was given by respondent to [B] Steel counsel followed by the filing of a stipluation to dismiss. According to the petition, respondent, for about two years, engaged in a pattern of misrepresentation to his client in an effort to cover up the unauthorized termination and settlement of the lawsuit.

Respondent, in his answer to the petition for discipline, denied all of the allegations of wrongdoing and stated that the settlement and termination of the action was done so with the knowledge, consent and permission of his client, [A]. On April 25, 1984, this matter was referred to hearing committee [ ] consisting of [ ]. Hearings were held by the committee on June 19 and 20, 1984. At the hearings, petitioner was representated by Assistant Disciplinary Counsel, [ ], and respondent was represented by

himself. Subsequent to hearing, [C], Esq., entered his appearance for respondent. On February 4, 1985, [C] requested the hearing committee to reopen the proceedings to allow submission of additional evidence citing inadequate pre-hearing investigation by respondent on his own behalf, and failure to call key witnesses. The hearing committee denied this request.

The report of the hearing committee was filed on March 19, 1985. The committee determined that respondent had settled [A]'s case and obtained its dismissal, utilizing a forged document and without his client's knowledge, authority or consent. Based on such conduct, the committee found violations of the following Disciplinary Rules of the Code of Professional Responsibility: D.R. 1-102(A)3, D.R. 1-102(A)(4), D.R. 1-102(A)(5), D.R. 1-102(A)(6), D.R. 7-101(A)(2), D.R. 7-102(A)(5) and D.R. 7-102(A)(8). The committee reported that, in its judgment, respondent was a sincere young man who seriously performs his duties but was caught in a set of circumstances "which he responded to with regrettable conduct, but he did not take the action for his own financial gain." The committee recommended as discipline a one-year suspension, suggesting that such discipline was significant enough to reflect the seriousness of the ethical violations.

Both parties filed exceptions to the report and recommendations of the hearing committee. Petitioner excepted to the recommended discipline of the one-year suspension, asserting that such period was too lenient in view of the conduct of respondent, especially in view of the forgery and cover-up. Respondent contended by his exceptions that the committee had erred in the following respects:

1. By refusing to reopen the proceedings for the purpose of taking additional evidence.

2. By admitting a trip log prepared by [A] which allegedly did not comply with the Business Records Act.

3. By admitting testimony regarding fees paid by [A] to respondent for the [B] Steel litigation allegedly contrary to Pa. R.D.E. 207(b)(2).

4. By failing to dismiss the petition for discipline because disciplinary counsel allegedly failed to investigate and disclose exculpatory evidence in the nature of an alleged admission by [A].

5. By making findings of fact which established respondent's culpability on allegedly insufficient evidence to establish such unethical conduct on the part of respondent.

Upon request, oral argument was scheduled for June 20, 1985, at which time the matter was submitted to a Disciplinary Board Panel consisting of John R. Padova, Chairperson, James F. Mundy and James J. Curran, Jr. On June 26, 1985, the board entered an order in accordance with and pursuant to Disciplinary Board Rule §89.253, reopening the matter before the hearing committee and remanding the entire record in connection therewith to such hearing committee in order that counsel for respondent may have the opportunity to supplement it by new evidence as per his request. Leave was also granted to the Office of Disciplinary Counsel to submit such rebuttal evidence that might pertain to material submitted at a reconvened hearing. By letter dated August 22, 1985, from [C], respondent's counsel, the hearing committee was advised that efforts to marshal witnesses and present additional testimony had failed. Respondent's counsel asserted that a reopened hearing would serve no purpose and that respondent had recently undergone treatment for a serious emotional problem which had left him in a weakened condition and unable to continue to

work at the practice of law for some time. On this record, the matter before the hearing committee was closed on the report of the hearing committee filed March 19, 1985 which had recommended a one-year suspension.

The matter then came before the Disciplinary Board for adjudication on October 29, 1985. Upon review of the entire record in this proceeding, including the report, findings and recommendations of the hearing committee [ ], we hereby recommend that the instant petition for discipline be sustained and that respondent be suspended from the practice of law for a period of two years, with his reinstatement to be conditioned on the submission of a medical report indicating that respondent is physically and metally capable of resuming the responsibilities of his profession.

## II.  SUMMARY OF THE EVIDENCE

The essence of the case submitted by petitioner was that respondent had undertaken the representation of [A] in an action against [B] Steel, that respondent had terminated the action on behalf of his client without his client's authority, consent or approval and through the use of a forged document, and that respondent thereafter engaged in a series of misrepresentations to cover up his unauthorized activity. Petitioner's principal witness was the former client, [A], who testified to the representation and that he at no time had signed a settlement agreement and general release nor authorized the settlement or termination of his action for $60. With respect to the document that contained his purported signature, [A] stated that the first time that he ever saw the document was in 1983 when an investigator for the Disciplinary Board showed it to him.

He also testified that he did not learn that the case against [B] Steel had been dismissed or settled for $60 until June 22, 1983 as a result of a telephone call made by him to the chambers of the Honorable [D], the Federal Judge to whom the case had been assigned. [A] also testified that, in 1982 and part of 1983, he had made frequent calls to respondent for status reports and had not been told that his case was settled but rather that [B] Steel had been transmitting a series of increasing offers for the settlement of the case. [A] testified that he finally accepted an offer of $85,000 and, on May 12, 1983, respondent called him and told him that he had received the $85,000 check and would hold it for seven days for it to clear the bank. Thereafter, upon repeated follow-up by [A], respondent engaged in a series of misrepresentations about such settlement check and, ultimately, informed [A] that [B] Steel had issued a stop payment order. [A] also testified that respondent, in August of 1982, requested additional money for the purpose of a court reporter and economist and that he paid $750 to respondent and received a refund of $500.

The testimony of respondent, after admitting to the representation, sharply conflicted with the testimony of [A]. Respondent testified that, after undertaking the representation, he had come to the conclusion that the case had no merit. He stated that he entered into negotiations with [E], [B] Steel counsel, and eventually settled the matter for costs of $60. He also testified that he had had a number of conversations between May 19 and June 5 of 1981 with his client regarding this matter and that [A] had "agreed to this arrangement and he also agreed to the arrangement that we drop the case." He categorically stated that [A] either sign the release or cause someone else to sign it. Respondent categori-

cally stated that "I did not sign it. I did not ask anybody else to sign his name to that document". With respect to the $60 settlement check, respondent stated that he had placed the check in his file and did not follow up on it. Respondent explained the August 24, 1982 payment by [A] in the amount of $750 as being a payment on account of court costs for the representation of [A]'s mother, [F]. He acknowledged the refund of $500, stating that he only wanted $250 on account of such costs. The [F] case was a "slip and fall" accident case which respondent was handling on a percentage basis. Respondent did acknowlege a series of telephone calls made to him by [A] after 1981. However, respondent asserted that he would tell [A] that his case was over.

Other evidence was presented by the parties. Petitioner presented the testimony of a handwriting expert, [G], who opined that [A] had not signed the release. Respondent's handwriting expert, [H], testified that respondent may or may not have signed the release. [A]'s wife corroborated the testimony of [A]. Petitioner also presented the testimony of [I] who corroborated [A]'s testimony concerning respondent's misrepresentations that [B] Steel had settled the matter in 1983 for $85,000, but had then stopped payment on the check. Petitioner also introduced, through [A], a trip log prepared by [A] indicating that he was on his way to Atlanta, Georgia in his capacity as a truck driver on July 11, 1981, which was the date that [A] was supposed to have signed the so-called release. The telephone bills of [A] were introduced into evidence to corroborate his testimony concerning the telephone calls he had made to respondent in both Scranton and Washington, D.C. concerning the case to Federal Judge [D], and to defense counsel, [E].

## III.   EVIDENTIARY PROBLEMS

In his brief on exceptions, respondent asserts as erroneous the following rulings made by the hearing committee concerning evidentiary matters:

1. To the admission of Exhibit P-9, a trip log prepared by [A], asserting non-compliance with the Business Records Act, no. 6108(B).

2. To the committee's admission of testimony regarding fees paid by [A] to respondent in the amount of $750, asserting inadmissibility under Pa. R.D.E. 207(b)(2) and that respondent was not put on proper notice concerning the introduction of this evidence.

With respect to the trip log, T.L., its probative value, if properly admitted, would be to show that [A] could not have signed the release on July 11, 1981 in view of the fact that he was traveling at that time. Respondent objected to P. 9 and asserts that the record was not identified by its custodian, to wit: [A]'s employer. The Business Records Act, on its face, states that a business record may be introduced either through the custodian or *other qualified witness*. [A] testified that he was the preparer of the log and that the entries contained therein were entered by him on the same day as to which they pertain. His testimony stands for the proposition that not only was he the preparer but that the log was prepared contemporaneously with the event that it describes. In Poltorak v. Sandy, 236 Pa. Super. 355, 345 A.2d 201 (1975), the Superior Court of Pennsylvania upheld the admission into evidence of a certain record on the testimony of a person who was not the actual custodian of the record at the time of trial. The court noted, "It is apparent from the wording of the act, that the Legislature intended to grant to trial courts a certain amount of discretion in de-

ciding whether or not to admit business records." We believe that the trip log was reliably identified by a "qualified person" and recommend that the hearing committee's ruling not be disturbed.

Respondent's exception to the admission into evidence by the hearing committee of the fees paid by [A] to respondent is grounded on respondent's observation that such evidence was not contained either in the D.B.-7 letter or the petition for discipline. Respondent asserts that such admission constituted a violation of respondent's due process rights (notice) as well as §207(b)(2) of the Pennsylvania Rules of Disciplinary Enforcement. Petitioner argues that this evidence was submitted on the issue of continuing misrepresentation rather than as an independent additional charge of misappropriation or wrongfully collecting fees. Board Rule no. 87.7(b)(1) sets forth what a D.B.-7 letter must contain. Board Rule 89.52(b) sets forth what a petition for discipline must contain. There is no requirement in either of these rules that evidence must be disclosed. Certainly, under board rules, Disciplinary Counsel must set forth sufficient information concerning the charges of misconduct so as to put respondent on notice thereof. We have reviewed the D.B.-7 letter and petition for discipline and find that they conformed with the appropriate board rules in this regard. In any event, the record shows that, although the hearing committee overruled respondent's objection to this evidence, he was offered a continuance, which he later stated would not be necessary. In addition, this board, by order dated June 26, 1985, reopened the hearings to give respondent an opportunity to supplement the record with new evidence. Every effort has been made in these proceedings to accommodate respondent's opportunity to meet the charges and petitioner's proof

in an informed manner. We would therefore recommend that the hearing committee's ruling not be disturbed in connection with the admission of this evidence.

## IV. DISCUSSION

The two propositions which have been raised by respondent in support of his request for dismissal, are:

1. That Disciplinary Counsel failed to investigate and disclose exculpatory evidence in violation of respondent's due process rights, and

2. That the evidence was insufficient to establish any unethical conduct on the part of respondent.

Respondent's position regarding the conduct of Disciplinary Counsel concerning "exculpatory evidence" must be viewed within its factual context. Respondent asserts that he had advised assistant disciplinary counsel, both by telephone in October of 1983 and by his answer to D.B.-7 letter on November 7, 1983, that [A] had admitted knowing of the settlement and dismissal of this case to a reporter for the [J], but that respondent could no longer remember the identity of this reporter. No investigation was conducted by the Office of Disciplinary Counsel to determine the reporter's identity. But, the record contains no request of the Office of Disciplinary Counsel by respondent to do so. After the petition for discipline was filed, respondent, by his own efforts, identified the reporter who had no recollection of such admission. Respondent's position is based on the *hypothesis* that, had disciplinary counsel investigated the lead, he would have identified the reporter and obtained exculpatory evidence. Of course, that hypothesis has no support in this record.

Although respondent *surrounds* his proposition with the alleged failure to *disclose* exculpatory evidence, it is clear that the only questions actually raised are: (1) whether the Office of Disciplinary Counsel has a per se obligation under the Rules to investigate all leads, and (2) whether Disciplinary Counsel's failure to investigate to determine the identity of the newspaper reporter in this case was so repugnant that it violated due process concepts. We find no such obligation under the rules and also conclude that disciplinary counsel's conduct in this case did not violate respondent's due process rights. BR-87.6 provides:

"Investigation.

"Subject to the policy supervision and control of the Chief Disciplinary Counsel, the investigative staff of the district office shall make such investigation of the complaint and report thereon *as may be appropriate*." (Emphasis provided.)

Disciplinary Counsel asserts in his brief that, as a matter of policy, its investigators will not ordinarily question a newspaper reporter in light of the required confidentiality imposed by the disciplinary process.

Rule 213(a), Pa.R.D.E., provides: "At any stage of an investigation both Disciplinary Counsel and a respondent attorney shall have the right to summon witnesses before a hearing committee and require production of records before the same by issuance of subpoenas." Compulsory process, therefore, is available to respondent during the investigative stage (after the D.B.-7 letter) to assist him in his own investigation.

The ability of respondent to have conducted his own investigation with the assistance of compulsory process and the policy asserted by Disciplinary Counsel pertaining to appropriate investigation con-

stitute adequate reason and fundamental fairness and, therefore, satisfy due process.

We have carefully reviewed the record and arguments of all counsel concerning the sufficiency of the evidence. Although the standard of proof in a Disciplinary Hearing is a preponderance of evidence which is clear and satisfactory, the misconduct may be proven "solely by circumstantial evidence" Office of Disciplinary Counsel v. Grigsby, 493 Pa. 194, 425 A.2d 730, 732 (1981). Our review of the testimony has indicated sharply conflicting versions between the complainant and respondent as to what happened. Each side testified clearly, although in contradiction, with respect to the central issue of authority and consent as well as the circumstances that followed. Of course, the factual determinations rested on credibility. This board undertakes a de novo review of the hearing committee's report. However, the board will ordinarily give deference to a hearing committee's findings concerning credibility and demeanor. In Office of Disciplinary Counsel v. Lewis, 493 Pa. 519, 426 A.2d 1138, 1142 (1981), the Supreme Court of Pennsylvania itself has recognized that a hearing committee's findings should serve as "guidelines for judging the credibility of witnesses." With regard to the central issues in this case, the hearing committee, which had the opportunity to view the demeanor of the witnesses, chose to accept claimant's testimony, also finding circumstances in the other evidence that corroborated claimant's version as to what had happened, and added persuasion and preponderance thereto. We find no reason to reject the committee's findings of fact which support in all respects the violations as determined by the committee.

## V. PRIOR RECORD

No record exists of any past disciplinary violations of the part of this respondent.

## VI. RECOMMENDED DISCIPLINE

Hearing committee [ ] has recommended that a one-year suspension be imposed on respondent, believing such suspension to be significant enough to reflect the seriousness of the ethical violations. The committee notes its opinion that respondent is a sincere young man who seriously performs his duties but was caught "in a set of circumstances which he responded to with regrettable conduct, but he did not take the action for his own financial gain." We accept the committee's characterization of respondent but are moved to the recommendation that one year is insufficient. Although respondent received no financial gain, his client and the profession has suffered a serious transgression. Unauthorized activity, forgery and cover-up under the circumstances of this case, in our opinion, require more than a one-year suspension. We therefore recommend that a two-year suspension be imposed. We also take into consideration for disposition purposes, respondent counsel's statement by letter dated August 22, 1985, pertaining to respondent's emotional and physical condition. Based thereon, we recommend that respondent's reinstatement be conditioned on a medical report indicating that he is emotionally and physically capable of resuming the responsibilities of his profession.

## VII. FINDINGS OF FACT

The Disciplinary Board of the Supreme Court of Pennsylvania hereby adopts the following findings of fact of the hearing committee:

1. Respondent, [ ] is an attorney admitted to practice law in the Commonwealth of Pennsylvania and is presently an Assistant U.S. Attorney for the [ ] District of Pennsylvania. Respondent was formerly engaged in the private practice of law in the firm of [K], [ ], [ ], County, Pa., and was so employed at the time in question. Respondent was born on June 18, 1951, was admitted to the practice of law in 1978 and maintains his home residence at [ ].

2. On or about July 1, 1976, [A] was discharged by his then employer, the [B] Steel Corporation.

3. Believing that his discharge was motivated by racial prejudice, [A] timely filed a written charge with the United States Equal Employment Opportunity Commission. On September 4, 1979, the EEOC found reasonable cause to believe that [A]'s race was a factor in his discharge and [A] hired respondent at the law firm of [K] for representation in his claim against his former employer.

4. After receiving a "Notice of Right to Sue" from the EEOC, [A], by and through respondent of the law firm of [K], filed a civil action against the [B] Steel Corporation on August 14, 1980, in the United States District Court for the [ ] District of Pennsylvania, Civil Action no. [ ], alleging violations of Title VII of the Civil Rights Act of 1964.

5. Thereafter, in the summer of 1981, respondent entered into an agreement with counsel for [B] Steel Corporation to settle the litigation for the total sum of $60, without the knowledge, consent or permission of [A].

6. Specifically, in July, 1981, respondent provided defense counsel, [E], Esq., with a "Settlement Agreement and General Release" which resolved the litigation for the sum of $60, which agreement

and release was dated July 11, 1981, and which contained the purported signature of Usry.

7. In fact, respondent forged, or caused to be forged, the signature of [A] on the aforesaid agreement and release, and in fact [A] had no knowledge of any such agreement and release until the document was brought to his attention by the Office of the Disciplinary Counsel in 1983.

8. In addition, on August 18, 1981, respondent entered into a stipulation of dismissal with prejudice with defense counsel [E], Esq., which was filed with the court on August 24, 1981, without [A]'s permission.

9. Respondent continued to fail to inform [A] that his civil action had been dismissed with prejudice, and when [A] contacted respondent in late 1982 to inquire as to the progress of his litigation, respondent thereafter engaged in a course of misrepresentation to conceal from [A] the fact his action had been dismissed with prejudice in 1981 and to conceal the fact that respondent had effected the dismissal by presenting to defense counsel a forged agreement and release.

## VIII. CONCLUSIONS OF LAW

Based on the above findings of fact, the committee concludes as a matter of law that the said respondent has violated the following Disciplinary Rules of the Code of Professional Responsibility:

A. D.R. 1-102(A)(3): A lawyer shall not engage in illegal conduct involving moral turpitude;

B. D.R. 1-102(A)(4): A lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

C. D.R. 1-102(A)(5): A lawyer shall not engage in conduct that is prejudicial to the administration of justice;

D. D.R. 1-102(A)(6): A lawyer shall not engage in any other conduct that adversely reflects on his fitness to practice law;

E. D.R. 7-101(A)(2):. A lawyer shall not intentionally fail to carry out a contract of employment entered into with a client of [sic] professional services.

F. D.R. 7-102(A)(5): In his representation of a client, a lawyer shall not knowingly make a false statement of law or fact;

G. D.R. 7-102(A)(8): In his representation of a client, a lawyer shall not knowingly engage in other illegal conduct or conduct contrary to a disciplinary rule.

## IX. BOARD'S RECOMMENDATION

1. The Disciplinary Board recommends to the Supreme Court of Pennsylvania that respondent be suspended from the practice of law for a period of two years.

2. The Disciplinary Board recommends to the Supreme Court of Pennsylvania that respondent's reinstatement be conditioned on a medical report indicating that respondent is emotionally and physically capable of resuming the responsibilities of his profession.

3. The Disciplinary Board recommends to the Supreme Court of Pennsylvania that the costs of these proceedings be paid by respondent.

Ms. Heh, Prof. Keck and Mr. Tumolo did not participate in the adjudication.

## ORDER

NIX, *C.J.*, And now this January 9, 1986, upon consideration of the recommendation of the Disciplinary Board dated December 3, 1985, it is ordered

that respondent, be and he is suspended from the Bar of this Commonwealth for a period of two years, and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.